UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                              CASE No. 8:10-CR-348-T-30TGW

BASILLIO ALVARDO

_____

REPORT AND RECOMMENDATION

The defendant has filed a Motion to Suppress Any and All
Physical Evidence and/or Statements (Doc. 17) obtained as a result of an
allegedly invalid traffic stop of the defendant's vehicle.  An evidentiary
hearing established that law enforcement had probable cause to believe that
the windows on the defendant's vehicle were illegally tinted in violation of
Florida law, and, therefore, the defendant's vehicle was stopped lawfully.
Accordingly, I recommend that the motion to suppress be denied.

I.

Two witnesses testified on behalf of the Government at the
evidentiary hearing in this matter.  The defendant cross-examined these

witnesses, but did not call any witnesses of his own.   Each party also proffered documentary evidence (see Gvt. Exs. 1-9, Def. Ex. 1).

Sarasota County Sheriff's Deputy Adam Shaw, the officer who initiated the traffic stop of the defendant's vehicle, testified first.   Deputy Shaw has been a law enforcement officer with the Sarasota County Sheriff's Office since January 2010.   In addition to 770 hours of basic officer training, he underwent 16 weeks of field training, during which he learned techniques for the detection of illegal window tinting.   Deputy Shaw testified that he has stopped vehicles for suspected illegal window tint on more than 100 occasions, and has been incorrect only once.

In this connection, Deputy Shaw stated that Florida law requires that 28% of visible light shine through the tint on the driver's side and passenger's side windows.   He testified two reasonable indicators that the window tint is illegal are an inability to see the silhouette of a driver or determine the number of vehicle occupants.   Deputy Shaw added that he will not stop a vehicle for illegal window tint if it is a "close call."

Shortly after midnight on June 15, 2010, Deputy Shaw was patrolling Bee Ridge Road in Sarasota County, a well-lit four-lane road with

a median. He was driving eastbound when he observed going in the opposite direction a red Mitsubishi Galant automobile with window tint that appeared to be illegal. Deputy Shaw testified that, as the vehicle passed him on the heavily-lit street, he could not see through the driver's side window the silhouette of a driver, or determine if there were passengers in the car (see Gvt. Exs. 1-9). Deputy Shaw stated that he turned his patrol vehicle around and, after catching up with the car, pulled alongside the driver's side of the vehicle to take another look through the window. However, he was still unable to see the driver's silhouette through the window. Deputy Shaw testified that he was 95% certain that the window tint was illegal. Based on his two observations of the window tint, Deputy Shaw initiated a traffic stop of the vehicle for excessive window tinting.

After Deputy Shaw initiated his traffic lights, the defendant stopped his vehicle. Deputy Shaw subsequently called for back-up, and Sarasota County Sheriff's Deputy Michelle DiCapua arrived thereafter. Deputy Shaw ran the defendant's license, which revealed that the defendant was on inmate release status for aggravated assault with a deadly weapon. Consequently, the deputies had the defendant step out of the vehicle.

-3-

Sarasota County Sheriff's Deputy Judith Williams then arrived at the traffic stop in response to Deputy Shaw's request for a patrol unit with a tint meter. Deputy Williams measured the tint, and told Deputy Shaw that the tint on the defendant's windows permitted penetration of only two percent of visible light, well below the legal threshold.

As Deputy Shaw was writing the defendant a traffic citation for illegal window tint, a K-9 patrol unit arrived.* Sarasota County Sheriff's Deputy Brian Biegel had his K-9, Tikko, a drug detecting canine, do an air sniff around the vehicle (Def. Ex. 1). Tikko alerted twice on the front driver's side wheel (id.). Based on the K-9 alert, deputies DiCapua and Domonic Fornal searched the vehicle, during which they discovered 246.1 grams of methamphetamine, a stolen firearm, a bag with bullets, and drug paraphernalia.

The defendant was arrested for trafficking in methamphetamine, possession of a firearm by a convicted felon, and grand theft of a firearm (see Def. Ex. 1). He was also issued a citation for illegal window tint (id.). As the defendant was being transported to jail, he told Deputy Shaw that he had

---

*Deputy Shaw stated that approximately ten minutes had elapsed from the traffic stop to the arrival of the K-9 unit.

-4-

"dropped off 30 pounds" before he was stopped, and that "he has been doing this for a long time and he knows how to beat a charge" (id.).

The second witness to testify at the hearing was Deputy Williams. She testified that she performed a window tint test on the defendant's vehicle, and confirmed that the side windows of the defendant's vehicle transmitted only two percent of visible light.

In August 2010, the defendant was indicted in this court on charges of possession with intent to distribute fifty grams or more of methamphetamine, possession of a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm (Doc. 1). Thereafter, the defendant filed this Motion to Suppress all physical evidence and statements obtained as a result of the traffic stop on June 15, 2010, on the ground that law enforcement initiated the traffic stop without probable cause to believe that the defendant's vehicle windows were illegally tinted (Doc. 17, pp. 6-7). The motion was referred to me for an evidentiary hearing, and that has been conducted.

II.

"Traffic stops qualify as seizures under the Fourth Amendment." United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir. 2007), cert. denied, 551 U.S. 1108 (2007). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Probable cause exists when, under the totality of the circumstances, there is a fair probability that illegal conduct has occurred. See United States v. Sokolow, 490 U.S. 1, 7 (1989).

As indicated, Deputy Shaw testified that he stopped the defendant's vehicle because the windows appeared to be illegally tinted. Florida law prohibits driving motor vehicles on which the side windows forward of, or adjacent to, the driver's seat have been treated with "any sunscreening material or other product or covering which has the effect of making the window nontransparent or which would alter the window's color, increase its reflectivity, or reduce its light transmittance" below the statutorily permitted level of "light transmittance of at least 28 percent in the visible light range." Fla. Stat. §316.2953. A violation of this section is a noncriminal traffic infraction. Id.

-6-

The uncontroverted evidence shows that Deputy Shaw had probable cause to believe that the windows on the defendant's vehicle were illegally tinted when he stopped the vehicle. Thus, Deputy Shaw, who had meritoriously issued more than 100 citations for illegal window tint during his short tenure, noticed as the defendant's vehicle passed him on a well-lit street that he could not detect the silhouette of the driver through the driver's window. Deputy Shaw confirmed his initial observation by pulling alongside the car and again looking inside the window, but he was still unable to see the driver's silhouette. Deputy Shaw had learned during his training that this was a reasonable indicator that the window tint was illegal. Based on his observations, and his training and experience, Deputy Shaw initiated a traffic stop of the defendant's vehicle for illegal window tint. This evidence – which I find credible – establishes that Deputy Shaw had probable cause to believe that the window-tint statute was being violated. Therefore, he lawfully stopped the defendant's vehicle. United States v. Weaver, 145 Fed. Appx. 639, 641 (11th Cir. 2005)(unpub. dec.)(a police officer may stop a vehicle for violating Florida's window-tint statute when he "reasonably believes the statute is being violated"); see, e.g., United States v. Moore, 2006 WL 1232811 at *3 (M.D. Fla. 2006)(unpub. dec.)(law enforcement unable to see a silhouette through the vehicle

-7-

window at night established probable cause for a window tint infraction); United States v. Gonzalez, 2009 WL 3230787 at *2 (M.D. Fla. 2009)(probable cause to stop a vehicle for illegal window tinting based on officer's inability to see inside the vehicle as it passed his patrol car).

This conclusion is consistent with the other evidence presented at the hearing. Thus, Deputy Williams' testimony that the defendant's side windows transmitted only two percent of visible light evidences that the window tint was not even close to the legal threshold under Florida law. Furthermore, photographs of the defendant's vehicle (albeit in daylight) plainly show that the tint on the vehicle was very dark (see Gvt. Exs. 1-9).

The defendant seemingly conceded at the hearing that, if Deputy Shaw's testimony is accepted, there was probable cause to stop the vehicle. However, the defendant attempts to impeach Deputy Shaw's credibility, arguing that Deputy Shaw's testimony is inconsistent with his probable cause affidavit because Deputy Shaw's testimony that he was unable to see the driver's silhouette through the defendant's window, and that he pulled alongside the vehicle to check the window tint before initiating the traffic stop, was not included in the probable cause affidavit. This argument is unpersuasive.

First, Deputy Shaw's testimony is not inconsistent; it is simply more detailed than his probable cause affidavit. Furthermore, an officer's testimony could understandably be more detailed than a police report. That is especially true in this case, where the focus of the traffic stop evolved from a noncriminal traffic citation for illegal window tint, to the discovery of 246.1 grams of methamphetamine, a stolen gun, and drug paraphernalia, and the defendant's arrest on three serious felony charges. In light of the subsequent developments, it is understandable that Deputy Shaw did not belabor his citation for a noncriminal traffic infraction.

Furthermore, Deputy Shaw's testimony of an illegal window tint has been confirmed by the tint meter. Under these circumstances, the omission in the affidavit of details regarding the traffic stop is a feeble basis to conclude Deputy Shaw's testimony was not credible.

Notably, the defendant did not argue any other basis for discounting Deputy Shaw's testimony. Significantly, although the defendant suggested at the hearing that the traffic stop was pretextual, he did not identify any factor that would have motivated Deputy Shaw to stop the defendant's vehicle other than the illegal tinting.

-9-

Moreover, I discern no reason for rejecting Deputy Shaw's credibility. Thus, his testimony was plausible and uncontroverted, and it is buttressed by the other evidence presented at the hearing. Also, there was nothing about Deputy Shaw's demeanor that suggested deception; to the contrary, he was forthright and looked at me directly when responding to questions. Therefore, I accept as credible Deputy Shaw's testimony regarding the circumstances surrounding the traffic stop of the defendant's vehicle.

Since the defendant appeared to concede at the hearing that, if Deputy Shaw's testimony is accepted, there was probable cause to stop the vehicle, the arguments in the defendant's motion to suppress are addressed only briefly. The thrust of the defendant's motion was that, because Deputy Shaw observed the defendant's car only briefly after midnight as it was traveling in the opposite direction, Deputy Shaw could have formed only a hunch that the defendant's vehicle windows were illegally tinted (Doc. 17, pp. 9-11). However, this contention is based solely on the probable cause affidavit and, as discussed, the detailed evidence at the hearing, which included testimony that Deputy Shaw pulled alongside the defendant, established that there was probable cause to stop the defendant's vehicle.

-10-

The defendant also argued in his motion that Deputy Shaw's statement in the probable cause affidavit that the vehicle windows "appeared illegally tinted" shows that Deputy Shaw lacked probable cause to stop his vehicle because "appeared" is a "less than definitive assessment of the vehicle's window tint" (Doc. 17, p. 10). Specifically, the defendant contended (id., p. 12):

> Obviously, Deputy Shaw did not know if the windows of [the defendant's] vehicle were illegally tinted since he hailed a colleague with a tint meter reader to come test the tint on the windows. Thus, Deputy Shaw was operating under the suspicion of a hunch....

This contention is unpersuasive, as it appears to confuse the standards for probable cause with those for a violation. The Eleventh Circuit rejected a similar argument in United States v. Weaver, supra, 145 Fed. Appx. 639. In Weaver, the defendant argued that the officer lacked probable cause to stop his vehicle for illegal window tint because the officer did not know the light transmittance percentage of the defendant's windows. Id. at 641. The Eleventh Circuit rejected this argument, stating that police do not have to ascertain conclusively whether a window-tint violation has occurred before there is probable cause to investigate it. Id. In this connection, the Eleventh Circuit noted that no officer knows the window transmittance percentage based on observation and, thus,

-11-

if such knowledge was required to establish probable cause, an officer could never stop a vehicle for a violation of this statute independent of another infraction. Id. Therefore, Deputy Shaw's request for a window-tint meter to confirm his reasonable belief that the defendant's windows were illegally tinted does not show that he lacked probable cause to believe there was a violation of the statute.

In sum, Deputy Shaw's testimony establishes that he had probable cause to believe that the window tinting on the defendant's vehicle was illegal. That, of course, is all that is necessary to conduct a traffic stop. Whren v. United States, supra, 517 U.S. at 810. Accordingly, the traffic stop of the defendant's vehicle was lawful. Furthermore, since the sole basis of the defendant's motion was that the initial traffic stop was illegal (see Doc. 17, pp. 12-13), the defendant has not asserted a cognizable basis for the suppression of any of the evidence obtained as a result of the traffic stop.

IV.

For the foregoing reasons, I recommend that the Motion to Suppress Any and All  Physical Evidence and/or Statements (Doc. 17) be denied.

Respectfully submitted,

THOMAS  G.  WILSON
DATED: NOVEMBER 17, 2010  UNITED  STATES  MAGISTRATE  JUDGE

-12-

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).